UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 23-____ |
| v. | : | |
| CHARLOTTE BAMBER | : | Violation: |
| | : | 18 U.S.C. § 1001 |
| Defendant. | : | (False Statements) |

### INFORMATION

The United States charges:

### GENERAL ALLEGATIONS

At all times relevant to this Information, except as otherwise indicated:

1. From August 2011 to May 2019, defendant **CHARLOTTE BAMBER** was employed as a trader at an international commodity trading firm (Trading Firm A), working in both Geneva, Switzerland and Houston, Texas. In that capacity, **BAMBER** traded different petroleum products, including oil distillates and liquid propane gas.

2. The U.S. Department of Justice (DOJ), including through the Federal Bureau of Investigation (FBI), was investigating allegations that Trading Firm A, and certain individuals at that firm, were engaged in commodity price manipulation. During that investigation, **BAMBER** self-disclosed to the DOJ that she and other traders at Trading Firm A had, in fact, engaged in manipulative trading conduct.

3. On September 8, 2020, **BAMBER** entered into a non-prosecution agreement (NPA) with the U.S. Department of Justice, Criminal Division, Fraud Section relating to her manipulative trading conduct while working at Trading Firm A. In the NPA, **BAMBER** admitted that she had committed wire fraud and commodity price manipulation while working as a trader at Trading Firm A. As part of the NPA, **BAMBER** agreed to comply with its terms, including the

requirements that she (i) truthfully and completely disclose all information with respect to her activities about which the United States might inquire of her, and (ii) provide truthful and complete information during, among other things, interviews with the United States.  A violation of these terms voided the NPA.

4. On several occasions between 2019 and 2022, **BAMBER** met with the United States, including FBI agents, to answer questions regarding, among other things, her participation in, and knowledge of, manipulative trading activity at Trading Firm A.  In several of those meetings, **BAMBER** was asked explicitly whether she had been in contact with any employees of Trading Firm A and, if so, to describe the contact.

5. For example, on February 18, 2022, **BAMBER** met with FBI agents and DOJ Fraud Section attorneys in Washington, D.C. for an interview.  During the interview, **BAMBER** was asked whether she had been in contact with any current employees at Trading Firm A.  In response, **BAMBER** identified three current employees with whom she had been in contact and stated there were no other current Trading Firm A employees with whom she had been in contact.

6. In truth and in fact, on at least three occasions prior to the February 18, 2022 interview, **BAMBER** had created pseudonymous email accounts on end-to-end encrypted email platforms and sent emails containing threatening and/or harassing messages to several other current Trading Firm A employees, including employees who were subjects of the United States' investigation into Trading Firm A.  In these pseudonymous emails, **BAMBER** referenced, among other things, the United States' investigation into manipulative trading activity at Trading Firm A.

7. Moreover, on at least five occasions after the February 18, 2022 interview, **BAMBER** created additional pseudonymous email accounts and sent additional threatening and/or

harassing emails to current Trading Firm A employees, including employees who were subjects of the United States' investigation into Trading Firm A.

8.  **BAMBER** did not disclose these emails or her prior false statements to the United States until confronted with evidence of the emails on October 6, 2022.  Only at that point did **BAMBER** acknowledge that she had sent the pseudonymous emails and that she had not answered truthfully during prior interviews, including on February 18, 2022, when asked about contact with employees of Trading Firm A.

## COUNT ONE
(False Statements)

9.  Paragraphs 1 through 8 are incorporated herein.

10. On or about February 18, 2022, in the District of Columbia and elsewhere, **BAMBER**, in a matter within the jurisdiction of the executive branch of the government of the United States, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, in that **BAMBER** identified three current employees with whom she had been in contact and stated there were no other current Trading Firm A employees with whom she had been in contact, when, in truth and in fact, **BAMBER** had created pseudonymous email accounts on end-to-end encrypted email platforms and sent emails containing threatening and/or harassing messages to several other current Trading Firm A employees.

(**False Statements** in violation of Title 18, United States Code, Section 1001)

GLENN S. LEON
Chief, Fraud Section
Criminal Division
United States Department of Justice

By: *Matthew F. Sullivan* (signature)
_____
Matthew F. Sullivan, Trial Attorney (NYBN 4785952)
John Liolos, Trial Attorney (NYBN 5331053)
Avi Perry, Deputy Chief (NYBN 5035886)
1400 New York Avenue NW
Washington, DC 20530
(202) 578-6583 (Sullivan)
matthew.sullivan2@usdoj.gov